UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROOSTER PETROLEUM, LLC** | * | CIVIL ACTION |
| | * | |
| **VERSUS** | * | NO. 12-1322 |
| | * | |
| **FAIRWAYS OFFSHORE EXPLORATION, INC.,** | * | SECTION "L"(1) |
| **ET AL.** | * | |

## ORDER AND REASONS

The Court has pending before it Plaintiffs Rooster Petroleum, LLC and Rooster Oil &Gas, LLC's motion for a preliminary injunction. (Rec. Doc. 5). The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

**I.     BACKGROUND**

This cases involves a conflict over oil and gas processing facilities on High Island 154 ("HI 154"). Defendant Fairways Offshore Exploration, Inc. owned the lease covering HI 154 for several years. Fairways still owns the HI 154 A Platform and other processing facilities on HI 154. Plaintiff Rooster Oil & Gas, LLC is a co-owner of the lease covering High Island 141 ("HI 141"), and Plaintiff Rooster Petroleum, LLC is the designated operator of HI 141. A pipeline connects HI 141 to HI 154, such that all HI 141 production flows to HI 154 for processing. Because of this particular setup, Fairways and Rooster Petroleum entered into a Platform Use Agreement ("PUA") allowing Rooster Petroleum the right to use and access the HI 154 facilities in order to process HI 141 production.

Fairways stopped producing on its HI 154 lease on August 14, 2011. Fairways' lease provided that it would expire 180 days after the cessation of production, on February 20, 2012. Since HI 141 was still producing, Rooster Petroleum wanted to preserve access to the processing

facilities on HI 154.  Therefore, in December 2011, Rooster Petroleum requested a right-of-use and easement ("RUE") from Defendant Bureau of Ocean Energy Management ("BOEM"). Under 30 C.F.R. § 550.160(d), Rooster Petroleum was required to notify Fairways, and Fairways had an opportunity to comment on the RUE request.  In March 2012, Rooster Petroleum notified Fairways, and Fairways objected to the RUE request, citing its intention to decommission the HI 154 facilities and the financial risk of delaying this decommissioning until after the 2012 windstorm storm season.

In April 2012, BOEM denied the RUE request, stating:

> The former lessee and facility owner, Fairways Offshore Exploration, refuses to consent to your access and use of its property.  Therefore, there is no basis upon which BOEM can grant a right-of-use and easement.

(Pls.' Mot. Ex. 3, Rec. Doc. 5-5 at 1).  BOEM also ordered that HI 141 production be shut in on May 15, 2012.

Plaintiffs allege that Fairways' objection and intention to decommission the platform constitute a breach of the PUA, which Plaintiffs argue remains in effect until production from HI 141 ceases.  In the First Amended Complaint, Plaintiffs bring claims against Fairways for declaratory and permanent injunctive relief, or alternatively damages, or alternatively specific performance.  (Rec. Doc. 23 at ¶¶ 31-41).  Plaintiffs also seek injunctive relief against BOEM. *Id.* at ¶¶ 42-53.

## II.     PRESENT MOTION

Plaintiffs now move for a preliminary injunction (Rec. Doc. 5) against Defendant

Fairways.[1]  Plaintiffs ask for a preliminary injunction enabling them to continue to produce from HI 141 using the HI 154 facilities during the pendency of this lawsuit.  Plaintiffs argue that without such an injunction, their lease will terminate this November due to 6 months of non-production from HI 141, which constitutes irreparable harm both to them and to the public.  Plaintiffs also argue that they are likely to prevail on the merits of the case because the terms of the PUA dictate that it will remain in effect until production from HI 141 ceases, regardless of the status of Fairways' lease.

In opposition, Fairways argues that Plaintiffs' alleged injuries will not be irreparable, because Plaintiffs can be made whole through an award of monetary damages.  Furthermore, Fairways argues that Plaintiffs will not prevail on the merits because the PUA terminated when Fairways' lease terminated, and because Fairways' objection was simply an exercise of a valid legal right.

## III.   LAW AND ANALYSIS

### A.   Standard for Preliminary Injunctions

A preliminary injunction is an extraordinary remedy that is issued only when a party does not have an adequate remedy at law.  A preliminary injunction may be issued by this Court under Rule 65 if the plaintiff establishes four criteria: 1) irreparable injury, 2) substantial likelihood of success on the merits, 3) a favorable balance of hardships (equity), and 4) no adverse effect on the public interest.  *See Black Fire Fighters Ass'n v. Dallas*, 905 F.2d 63, 65 (5th Cir.1990).

---

[1] Plaintiffs originally moved for a preliminary injunction against Defendants BOEM and John L. Rodi as well, but the parties have since stipulated (Rec. Doc. 20) that Plaintiffs would withdraw their motion for a preliminary injunction against BOEM, and BOEM would grant Plaintiffs a temporary RUE if they prevailed on their motion for a preliminary injunction against Fairways.

**B.     Analysis**

At oral argument, Plaintiffs spent much of their time arguing the likelihood that they would succeed on the merits of this contractual dispute.  Plaintiffs argue that taken together, the PUA, the lease of HI 154, and the governing regulations demonstrate that Plaintiffs' right to use Fairways' facilities persists despite the termination of Fairways' lease.  At this time, however, the Court does not reach the issue of whether Plaintiffs are likely to succeed on the merits of the case, because Plaintiffs have not succeeded in showing that they will be irreparably harmed if a preliminary injunction does not issue.

Plaintiffs' first argument on this point is that they will be irreparably harmed by the termination of their lease because they will no longer be able to recover the reserves currently available on HI 141.  Plaintiffs submitted conflicting estimates of the value of those reserves in their briefs and at oral argument, but essentially, they argue that the cost of erecting a new platform would be unjustifiably high given the value of the remaining reserves (and would take too long to allow them to avoid losing their lease).  However, this very argument demonstrates that Plaintiffs' alleged injury will not be "irreparable"; on the contrary, Plaintiffs have already made attempts to quantify the value of that injury, and if they prevail on the merits at trial, they can receive a money judgment compensating them for this lost value.

At oral argument, Plaintiffs also raised the possibility—not previously mentioned in the briefs, and apparently unknown to Plaintiffs' counsel until the afternoon preceding oral argument—that a preliminary injunction would be appropriate due to concerns about Fairways' inability to satisfy a money judgment in the future.  This argument finds no support in the record, and the Court notes that there are other procedures that Plaintiffs can use to protect their interests

if this is a legitimate concern.  Plaintiffs have not convincingly shown that this is a situation "where a corporation is insolvent and its funds in danger of depletion such that a failure to maintain the status quo would make any damages remedy moot." *Citizens Savings Bank v. GLI Technical Servs., Inc.*, No. 96-2307, 1996 WL 737008, at *4 (E.D. La. Dec. 23, 1996) (Fallon, J.) (citations omitted); *see also Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (citing *Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686-87 (5th Cir. 1980)) (noting that a court may issue an injunction "to protect a remedy, including a damages remedy").

Finally, Plaintiffs argue that their inability to continue to produce from HI 141 would irreparably harm the public at large, because Plaintiffs' lease provides for a 16.7% royalty to the government for any oil or gas produced.  This argument is also without merit.  The remaining reserves at HI 141 will stay in the ground at HI 141, available for future production, regardless of whether Plaintiffs are able to recover them now.  If Plaintiffs' lease does terminate, the area can be released, and further production can occur through Fairways' facilities, another party's facilities, or a new platform constructed for that purpose.

In short, Plaintiffs have not met their burden of showing that they will be irreparably harmed if no preliminary injunction is issued.  Even if Plaintiffs' lease does terminate in November, and they lose the opportunity to produce the remaining reserves at HI 141, they would be able to receive full compensation for this loss through an award of money damages.

Accordingly, IT IS ORDERED that Plaintiffs' motion for a preliminary injunction against Fairways is DENIED.  IT IS FURTHER ORDERED that Plaintiffs' motion for a preliminary injunction against BOEM and John Rodi is DENIED AS MOOT.

New Orleans, Louisiana, this 8th day of August, 2012.

_____
UNITED STATES DISTRICT JUDGE