UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROOSTER PETROLEUM, LLC | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 12-1322 |
| | * | |
| FAIRWAYS OFFSHORE EXPLORATION, INC., ET AL. | * | SECTION "L"(1) |

## ORDER AND REASONS

The Court has pending before it Plaintiffs' motion to dismiss Fairways' counterclaim. (Rec. Doc. 38). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

I.  BACKGROUND

This case involves a conflict over oil and gas processing facilities on High Island 154 A ("HI 154 A"), a fixed offshore platform located on the Gulf of Mexico on the Outer Continental Shelf. Defendant Fairways Offshore Exploration, Inc. owned the lease covering HI 154 for several years. Fairways still owns the HI 154 A platform and other processing facilities on HI 154. Plaintiff Rooster Oil & Gas, LLC is a co-owner of the lease covering High Island 141 ("HI 141"), and Plaintiff Rooster Petroleum, LLC is the designated operator of HI 141. A pipeline connects HI 141 to HI 154, such that all HI 141 production flows to HI 154 A for processing. Because of this particular setup, Fairways and Rooster Petroleum entered into a Platform Use Agreement ("PUA") allowing Rooster Petroleum the right to use and access the HI 154 A facilities in order to process HI 141 production.

Fairways stopped producing on its HI 154 lease on August 14, 2011. Fairways' lease provided that it would expire 180 days after the cessation of production, on February 20, 2012.

Since HI 141 was still producing, Rooster Petroleum wanted to preserve access to the processing facilities on HI 154 A. Therefore, in December 2011, Rooster Petroleum requested a right-of-use and easement ("RUE") from Defendant Bureau of Ocean Energy Management ("BOEM"). Pursuant to 30 C.F.R. § 550.160(d), Rooster Petroleum notified Fairways of the RUE request. Fairways objected to the request, citing its intention to decommission the HI 154 A facilities and the financial risk of delaying this decommissioning until after the 2012 windstorm storm season. In April 2012, BOEM denied the RUE request. BOEM also ordered that HI 141 production be shut in on May 15, 2012.

In the First Amended Complaint, Rooster Oil & Gas and Rooster Petroleum (collectively, "Rooster") allege that Fairways breached the PUA when it objected to the RUE request and when it declared the PUA to be terminated. (Rec. Doc. 23 at ¶ 8). Rooster asks for declaratory and permanent injunctive relief, or alternatively damages, or alternatively specific performance. *Id.* at ¶¶ 31-41. Rooster also seeks injunctive relief against BOEM. *Id.* at ¶¶ 42-53.

In its Answer, Fairways denies liability and also submits a counterclaim for unjust enrichment. (Rec. Doc. 26 at pp. 11-13, ¶¶ 1-14). Fairways alleges that "the PUA terminated by operation of law" when Fairways' lease expired on February 10, 2012, *id.* at p. 12, ¶ 8, and as a result, Rooster knew or should have known that Fairways would have expected to be compensated for Rooster's continued use of the platform beyond that date, *id.* at p. 12-13, ¶ 12. Fairways claims that:

> Rooster was unjustly enriched because it received a benefit that caused the detriment or impoverishment of Fairways by accessing and using Fairways' Platform without permission from Fairways and without paying rental fees or otherwise compensating Fairways for Rooster's post-February 10, 2012 access and use of Fairways' Platform, and it is inequitable to allow Rooster to retain

2

that benefit.

*Id.* at p. 13, ¶ 13.

Shortly after filing the original Complaint, Rooster moved for a preliminary injunction against both Fairways and the BOEM. (Rec. Doc. 5). Rooster sought to preserve its ability to produce from HI 141 using the HI 154 A facilities during the pendency of this lawsuit; otherwise, its lease would be in danger of expiring after 6 months of nonproduction. Before the hearing on Rooster's motion, Rooster and the BOEM reached a Stipulation that resolved part of Rooster's motion. (Rec. Doc. 20). On August 8, 2012, the Court denied the remainder of the motion on the grounds that the loss of Rooster's lease would not constitute irreparable harm, since Rooster could be fully compensated for that loss by an award of money damages after final judgment. (Rec. Doc. 36).

## II.   PRESENT MOTION

Rooster now moves to dismiss Fairways' counterclaim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Rec. Doc. 38). Rooster argues that Fairways has pled only conclusory allegations to support its counterclaim for unjust enrichment, and that those allegations directly contradict allegations made in response to Rooster's Complaint. Furthermore, Rooster argues that its post-answer motion to dismiss is appropriate in this case because Rooster raised that defense in its Answer to Fairways' counterclaim.

Fairways responds that Rooster's motion is not timely and puts forth multiple reasons why it should not be construed as a motion for judgment on the pleadings, including the fact that Fairways has not had a chance to amend its pleadings to fix any potential deficiency. Fairways

also argues that Rooster's motion to dismiss should be denied on the merits, because Fairways' allegations in support of its counterclaim are sufficiently specific and are not contradictory.

## III. LAW AND ANALYSIS

### A. Timeliness of Rooster's Motion

Generally, a Rule 12(b) motion must be filed before responsive pleadings. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *see also* Fed. R. Civ. P. 12(b)(6) ("A motion making any [of the Rule 12(b) defenses] shall be made before pleading if a further pleading is permitted."). However, Rooster argues that because it listed failure to state a claim for which relief can be granted as an affirmative defense in its Answer to Fairways' counterclaim (Rec. Doc. 37 at ¶ 18), this Court should use its discretion to construe Rooster's motion to dismiss as a motion for judgment on the pleadings pursuant to Rule 12(c), *see Jones*, 188 F.3d at 324, or alternatively, a motion for summary judgment.

In opposition, Fairways cites *Berk-Cohen, L.L.C. v. Orkin Exterminating Co.*, No. 94-3090, 2004 WL 162905 (E.D. La. Jan. 16, 2004) (Fallon, J.), in which this Court declined to exercise discretion to construe an untimely 12(b)(6) motion as a 12(c) motion, in part on the grounds that it would be inappropriate to dismiss claims "without first permitting an opportunity to amend and cure any deficiencies." *Id.* at *2. However, that case involved a decade-old controversy, and a motion to dismiss filed seven months after months after the relevant Answer. *Id.* at *1, *2. In this case, far less time has elapsed since both the controversy itself and the filing of the answer, and leave to amend the contested pleadings remains a legal and practical possibility. *See* Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give

4

leave when justice requires."). Accordingly, the Court will construe Rooster's motion to dismiss as a motion for judgment on the pleadings, and will give Fairways leave to amend its pleadings if possible.

## C. Merits of Rooster's Motion

### 1. Standard for Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion pursuant to Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). When a court considers a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). The court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### 2. Analysis

Although the PUA provides for the application of Louisiana law, Fairways argues that the Outer Continental Shelf Lands Act ("OCSLA") requires the application of Texas law, and

5

Rooster states in another memorandum that Texas law "most likely" applies. (Rec. Doc. 39-2 at 6 n.20). The Court agrees with this conclusion. The OCSLA provides that the law of the adjacent state applies to "that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereupon," as long as it is not inconsistent with federal law. 43 U.S.C. § 1333(a)(2)(A). Fifth Circuit precedent holds that this true regardless of a contractual choice of law provision to the contrary. *Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990) (citations omitted). Accordingly, Texas law governs this dispute.

Texas law dictates that a claim for unjust enrichment exists only "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). "Unjust enrichment occurs when the 'person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain.'" *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.2d 265, 270 (Tex. App. 2004) (quoting *City of Corpus v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App. 1987)). "[T]o recover under such theory, the profit must be actually unjust under the principles of equity." *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App. 2002) (citation omitted). "Unjust enrichment is not a proper remedy merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Heidenfels Bros.*, 832 S.W.2d at 41 (quoting *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App. 1987)).

Rooster argues that Fairways has failed to state a claim upon which relief can be granted

under Texas law. According to Rooster, Fairways has failed to plead facts constituting "fraud, duress, or the taking of an undue advantage." Furthermore, Rooster argues that Fairways has not pled facts demonstrating that Rooster obtained a benefit at Fairways' expense. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998).

Fairways responds that it has pled sufficient facts to state a claim for unjust enrichment. Fairways has alleged that Rooster obtained a benefit by using Fairways' platform, that Rooster used the platform without Fairways' consent, and that Rooster did not compensate Fairways for that use. According to Fairways, these allegations are sufficient "because they describe the benefit that Rooster obtained—use of Fairways' platform—and how that benefit was obtained through the taking of an undue advantage—without Fairways' consent and without compensation to Fairways." (Def.'s Opp., Rec. Doc. 43 at 8).

Fairways' pleadings allege facts establishing that Rooster has obtained a benefit and that Rooster did not compensate Fairways for that benefit, but they provide no basis for a finding that Rooster secured that benefit through fraud, duress, or undue advantage. Fairways cites two examples of less detailed factual pleadings upheld under Texas law, but neither case is directly on point here. In *Vigo v. Reed*, No. 3:11-CV-2044-G, 2011 U.S. Dist. LEXIS 145233 (N.D. Tex. Dec. 16, 2011), the plaintiff alleged that he had paid a $150,000 deposit and received nothing in return. *Id.* at *2. In that case, the plaintiff alleged that there had been an agreement between the parties—namely, that the plaintiff would pay a total of $300,000 for a concert by the band Motley Crue in Buenos Aires—and that even though he had paid the $150,000 deposit as an advance toward this fee, no concert had been scheduled or performed. In ruling on the defendant's motion to dismiss the plaintiff's unjust enrichment claim, the *Vigo* court stated: "In

7

this case, Vigo has pled that he rendered a $150,000 deposit to Reed, and has not received anything in return. Complaint ¶ 15. Because the defendant has not provided any reason why it is entitled to this amount of money, Vigo has pled a claim for unjust enrichment." *Vigo*, 2011 U.S. Dist LEXIS 145233, at *8. From these two sentences alone, it could appear that the court upheld the plaintiff's unjust enrichment claim based only on the fact that the defendant had received a benefit without compensating the plaintiff for that benefit. But the pleadings in *Vigo* also included claims for negligent misrepresentation and fraud based on the defendant's conduct. Thus, the *Vigo* plaintiff alleged more than just a lack of compensation by the defendant; he alleged conduct by the defendant amounting to "fraud, duress, or undue advantage."

Fairways also cites *Mid-Town Surgical Center, LLP v. Blue Cross Blue Shield of Tex.*, No. H–11–2086, 2012 WL 3028107 (S.D. Tex. July 24, 2012), in which a health insurance company claimed unjust enrichment where it had allegedly overpaid a health care provider for services rendered. But in that case, the court used a slightly different definition of unjust enrichment: "the failure to make restitution of benefits received under such circumstances as to give rise to an implied or quasi-contract to repay." *Mid-Town Surgical Center*, 2012 WL 3028107, at *4 (quoting *Fun Time Centers, Inc. v. Cont'l Nat. Bank of Ft. Worth*, 517 S.W.2d 877, 884 (Tex. Civ. App. 1974)) (internal quotation marks omitted). The court then examined the factual pleadings and concluded that the health care provider had obtained a benefit that it would be "unjust" to retain. *Id.* Furthermore, it is possible that by retaining the alleged overpayments, the health care provider took undue advantage a mistake made by the insurer. *Cf. RDG Ltd. P'ship v. Gexa Corp.*, 14-04-00679-CV, 2005 WL 949171 (Tex. App. Apr. 26, 2005) (holding that "the evidence shows that RDG obtained the benefit of electricity by the taking of undue

advantage of Gexa's mistake when it refused to pay").

Moreover, both *Vigo* and *Mid-Town* involved "passive" unjust enrichment claims. In other words, in *Vigo* and *Mid-Town,* the plaintiffs alleged that the defendants "passively received [benefits] which it would [be] unconscionable to retain." *Villarreal*, 136 S.W.2d at 270 (internal quotation mark omitted). In this case, however, Fairways alleges "active" unjust enrichment, meaning that its pleadings must establish that Rooster has "wrongfully secured a benefit" from Fairways. *Id.* An alleged lack of compensation for the use of Fairways' property is not sufficient to establish "wrongful[]" conduct by Rooster.

Texas courts have found the presence of an "undue advantage" in a variety of circumstances. For example, as noted above, a party may take undue advantage of another party's mistake in providing a service with the expectation of payment, based on past agreements involving such payment. *RDG Ltd. P'ship*, 2005 WL 949171, at *4. In other cases, courts applying Texas law have found that a party took undue advantage of a position of power or trust. *See In re Raelyn Sales, Inc.*, CIV. A. NO. 3:01-CV-17, 2002 WL 226364 (N.D. Tex. Feb. 12, 2002); *Chesapeake Louisiana. L.P. v. Buffco Prod., Inc.*, 2:10-CV-359 JRG, 2012 WL 2505574 (E.D. Tex. June 28, 2012). In yet another case, a Texas court suggested that the occurrence of a trespass under Texas law could have constituted wrongful conduct supporting a claim of unjust enrichment. *Villareal*, 136 S.W.3d at 270.

In contrast, Fairways' claim in the present case "essentially asserts that [Plaintiff's] have received a benefit and have not offered compensation in return, which is insufficient to support a claim for unjust enrichment." *Leal v. Bank of Am., N. A.*, CIV.A. M-11-346, 2012 WL 1392089, at *5 (S.D. Tex. Apr. 20, 2012). Accordingly, Rooster's motion for judgment on the pleadings is

9

granted, but Fairways shall receive an opportunity to amend its pleadings in order to comply with Texas law.

## IV.   CONCLUSION

Accordingly, IT IS ORDERED that Rooster's motion to dismiss Fairways' counterclaim is GRANTED. IT IS FURTHER ORDERED that Fairways be given leave to file an amended counterclaim pursuant to Rule 15(a)(2) within 30 days of this order.

New Orleans, Louisiana, this 12th day of October, 2012.

_____
UNITED STATES DISTRICT JUDGE