UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROOSTER PETROLEUM, LLC** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 12-1322** |
| | * | |
| **FAIRWAYS OFFSHORE EXPLORATION, INC.,** | * | **SECTION "L"(1)** |
| **ET AL.** | * | |

## ORDER AND REASONS

The Court has pending before it Defendant Fairways Offshore Exploration, Inc.'s Motion for Partial Reconsideration (Rec. Doc. 65) of the Court's October 15, 2012 Order and Reasons (Rec. Doc. 62) ruling on the parties' cross motions for summary judgment (Rec. Docs. 39, 48). The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

### I.   BACKGROUND

This case involves a conflict over oil and gas processing facilities on High Island 154 ("HI 154"). The essential facts are as follows. Defendant Fairways Offshore Exploration, Inc. ("Fairways") owned the lease covering HI 154 for several years. Fairways still owns the HI 154 A platform and associated facilities on HI 154. Plaintiff Rooster Oil, LLC is a co-owner of the lease covering High Island 141 ("HI 141"), and Plaintiff Rooster Petroleum, LLC is the designated operator of HI 141. A pipeline connects HI 141 to HI 154, such that all HI 141 production flows to HI 154 for processing. In 2007, Fairways and Rooster Petroleum entered into a Platform Use Agreement ("PUA") designating Rooster Petroleum as the operator of the HI 154 facilities and granting Rooster Petroleum the right to use and access the HI 154 facilities to process production from both HI 141 and HI 154. (Rec. Doc. 39-4).

Production from Fairways' HI 154 lease stopped on August 14, 2011. Fairways' lease provided that it would expire 180 days after the cessation of production, on February 20, 2012. (Rec. Doc. 48-2 at 11-17). Since HI 141 was still producing, Rooster Petroleum wanted to preserve access to the HI 154 facilities. Therefore, on December 12, 2011, Rooster Petroleum requested a right-of-use and easement ("RUE") from Defendant Bureau of Ocean Energy Management ("BOEM") for the purpose of maintaining the HI 154 facilities. (Rec. Doc. 39-5 at 1). Under 30 C.F.R. § 550.160(d), Rooster Petroleum was required to notify Fairways, and Fairways had an opportunity to comment on the RUE request. On March 30, 2012, Fairways sent a letter to BOEM formally objecting to Rooster's request. (Rec. Doc. 39-8). On April 16, 2012, BOEM denied the RUE request. (Rec. Doc. 39-10). Rooster Petroleum has since commenced an administrative appeal of this denial (Rec. Doc. 48-2 at 46-67), which is still pending. The Bureau of Safety and Environmental Enforcement ("BSEE") ordered that HI 141 production be shut in on May 15, 2012.

Plaintiffs Rooster Oil & Gas and Rooster Petroleum (collectively, "Rooster") bring suit against Fairways as well as BOEM and its director, John L. Rodi (collectively, the "Federal Defendants"). In the First Amended Complaint, Rooster alleges that Fairways breached the PUA when it objected to the RUE request and when it declared the PUA to be terminated. (Rec. Doc. 23 at ¶ 8). Originally, Rooster asked for declaratory and permanent injunctive relief, or alternatively damages, or alternatively specific performance, *id.* at ¶¶ 31-41, but as described below, only the claim for damages now remains.[1]

---

[1] Rooster also seeks injunctive relief against the Federal Defendants, alleging that the BOEM violated both its governing regulations and the APA when it denied Rooster's RUE request. *Id.* at ¶¶ 42-53. However, these claims are not involved in the present motion.

On June 5, 2012, Rooster moved for a preliminary injunction against both Fairways and the Federal Defendants. (Rec. Doc. 5). Rooster sought to preserve its ability to produce from HI 141 using the HI 154 facilities during the pendency of this lawsuit; otherwise, its lease would be in danger of expiring after six months of nonproduction. Rooster and the BOEM reached a Stipulation that resolved part of Rooster's motion. (Rec. Doc. 20). On August 8, 2012, this Court issued an Order and Reasons (Rec. Doc. 36) denying the remainder of Rooster's motion on the grounds that the loss of Rooster's OCS lease would not constitute irreparable harm, since Rooster could be fully compensated by an award of money damages after final judgment.

Fairways' original Answer to Rooster's First Amended Complaint denied liability and also included a counterclaim for unjust enrichment. (Rec. Doc. 26 at pp. 11-13, ¶¶ 1-14). Fairways alleged that "the PUA terminated by operation of law" when Fairways' lease expired on February 10, 2012, *id.* at p. 12, ¶ 8, and as a result, Rooster knew or should have known that Fairways would have expected to be compensated for Rooster's continued use of the platform beyond that date, *id.* at p. 12-13, ¶ 12. However, on October 15, 2012, this Court issued an Order and Reasons (Rec. Doc. 61) granting Rooster's motion to dismiss that counterclaim (Rec. Doc. 38) for failure to state a claim upon which relief can be granted, which the Court construed as a motion for judgment on the pleadings. The Court held that Fairways had not pled fraud, duress, or the taking of an undue advantage as required by Texas law and dismissed Fairways' counterclaim, but granted Fairways leave to file an amended counterclaim.

On November 9, 2012, Fairways submitted an amended counterclaim for unjust enrichment and also requested leave to add a new counterclaim. (Rec. Doc. 64). The Court subsequently issued an Order and Reasons (Rec. Doc. 73) granting this request, and Fairways'

Amended Answer and Counterclaim (Rec. Doc. 74) now includes a second counterclaim for breach of contract by Rooster on the grounds that Rooster "failed to comply with applicable laws and regulations and failed to notify Fairways of these violations and resulting Incidents of Noncompliance, as required by the PUA" (Rec. Doc. 74 at p. 22, ¶ 55).

Rooster and Fairways also recently litigated cross motions for summary judgment. (Rec. Docs. 39, 48). The main issues involved in those motions were (1) whether the PUA remained in effect when Fairways' OCS lease expired; (2) whether Fairways' objection to Rooster's RUE request constituted a breach of the PUA; and (3) whether Fairways' objection caused Rooster's damages. In an Order and Reasons entered October 15, 2012 (Rec. Doc. 62), the Court ruled that the PUA did remain in effect when Fairways' OCS lease expired, and as a result, Fairways breached the PUA when it prematurely declared that the PUA had terminated. However, the Court denied summary judgment to both parties on the other issues due to a pending administrative appeal as well as the factual nature of the causation issue. The Court also declined to rule on whether the "mutual benefit" described in the PUA ceased to exist at any time since the execution of the PUA in 2007.[2]

## II. PRESENT MOTION

Fairways now moves for partial reconsideration (Rec. Doc. 66) of the Court's Order and Reasons (Rec. Doc. 62) ruling on the parties' cross motions for summary judgment. Primarily, Fairways asks that the Court reconsider its conclusion that Fairways breached the PUA by wrongful termination. Fairways argues that Texas law does not allow such a holding, and that

---

[2]Additionally, the Court granted summary judgment to Fairways on Rooster's claims for preliminary injunctive relief, permanent injunctive relief, and specific performance. That portion of Fairways' summary judgment motion was unopposed.

even if it did, Rooster waived any such claim with its subsequent conduct. Fairways also argues that the Court should have reserved the issue of whether Fairways actually breached the contract until it decided how to interpret the "mutual benefit" clauses in the PUA, an issue that the Court declined to rule on due to its factual nature. Rooster opposes the motion and disputes all of these points, arguing that the Court's conclusions were valid under Texas law.

### III. LAW AND ANALYSIS

#### A. Standard on Motions for Reconsideration

Motions asking a court to reconsider an order are generally analyzed under the standards for a motion to alter or amend a judgment pursuant to Rule 59(e) or a motion for relief from a judgment or order pursuant to Rule 60(b). *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Rule 59(e) governs when the motion is filed within 28 days of the challenged order. *See* Fed. R. Civ. P. 59(e). Because Fairways' Motion was filed within 28 days of entry of the Order and Reasons it challenges, the Court treats the Motion as one pursuant to Rule 59(e).

A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, Rule 59(e) serves the narrow purpose of correcting manifest errors or law or fact, or presenting newly discovered evidence. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 1667, 174 (5th Cir. 1990); *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v.*

*Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). In the Fifth Circuit, altering, amending, or reconsidering a judgment under Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citing *Clancy v. Empl'rs Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)). "A Rule 59(e) motion should not be used to re-litigate prior matters that . . . simply have been resolved to the movant's dissatisfaction." *Voisin v. Tetra Technologies, Inc.*, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). Yet at the same time, the Rule 59(e) standard "favors denial of motions to alter or amend." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

**B.     Analysis**

As a preliminary matter, the parties dispute whether they actually raised the wrongful termination theory of breach in their cross motions for summary judgment. Fairways argues that they did not, and that Rooster sought partial summary judgment only on the theory that Fairways' objection to its RUE request constituted a breach of the PUA. Fairways acknowledges that the Court is permitted to rule on grounds not raised by a party when adjudicating a summary judgment motion, but argues that the Court should have provided "notice and a reasonable time to respond" under Federal Rule of Civil Procedure 56(f).

Fairways' objection to Rooster's RUE request was indeed the main focus of briefing and oral argument. However, Fairways slightly overstates the extent to which the parties did not argue or mention wrongful termination line of argument in their briefs. As Rooster notes,

Rooster did briefly make this argument and provided some relevant legal authority in its summary judgment motion. (Rec. Doc. 39-2 at 9, 11-12). Accordingly, this Court did not "grant the motion on grounds not raised by a party" without providing notice and a reasonable time to respond in violation of Rule 56(f).

### 1.     The Nature of Fairways' Statement to BOEM

"In order to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform." Restatement (Second) of Contracts, § 250 cmt. b (1981), *cited in City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 738 (Tex. App. 2008); *see also Dudley v. Born*, 710 S.W.2d 638, 644 (Tex. App. 1986) (noting that to constitute "a breach or repudiation, the statements and actions of [the party to the contract have] to be absolute, positive, unretracted, unretractable, and unconditional"). Furthermore, in a claim for anticipatory breach of a contract, "[i]t is not sufficient that refusal to perform be based upon a genuine mistake or misunderstanding as to matters of fact or law." *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App. 1951); *see also*, *e.g.*, *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010) ("It is not sufficient if a party makes a genuine mistake or endures as to matters of fact or law that causes that party not to comply with its obligations.").

Fairways argues that its statement to BOEM was merely a description of Fairways' good faith understanding of the legal status of the PUA, and as a result, that statement cannot constitute repudiation of the contract as a matter of Texas law.[3] In opposition, Rooster argues

---

[3] Fairways also argues that its statement could not constitute breach of contract as a matter of law because it was made to BOEM, a third party, rather than to Rooster itself. However, as Rooster points out, Fairways included a similar statement in a March 30, 2012 letter addressed

that Fairways' statement was unambiguous with respect to Fairways' position that "Lease expiration . . . terminates the Platform Use Agreement." (Rec. Doc. 39-8 at 3). This is in contrast with cases such as *Dudley v. Born*, in which the court held that a party's statement that he "ought to start looking somewhere else to finance [a] project" was not sufficiently clear to terminate a loan agreement. 710 S.W.2d at 643.

Rooster is correct that Fairways' statement was unambiguous with respect to Fairways' view of the termination of the PUA. However, this lack of ambiguity is immaterial, because Fairways' statement clearly reflected a good faith misunderstanding of the PUA's legal status and therefore cannot constitute anticipatory breach under Texas law. Accordingly, Fairways is entitled to a withdrawal of the Court's grant of summary judgment on Rooster's wrongful termination claim.

### 2. Rooster's Conduct Following Fairways' Statement to BOEM

"Under Texas law, an anticipatory repudiation gives the nonrepudiating party the option to treat the repudiation as a breach, or ignore it and await the agreed upon time of performance. The nonrepudiating party must do one or the other; it cannot do both." *Bumb v. Intercomp Techs., LLC*, 64 S.W.3d 123, 125 (Tex. App. 2001); *see also Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 211 (Tex. 1999); *Gonzalez v. Denning*, 394 F.3d 388, 394-95 (5th Cir. 2004). In other words, "[n]otice of a party's intent not to perform under a contract . . . does not necessarily constitute an automatic contract recission." *Helsley v. Anderson*, 519 S.W.2d 130, 133 (Tex. Civ. App. 1975) (citing *Greenwall Theatrical Circuit Co. v. Markowitz*, 79 S.W. 1069, 1071 (Tex. 1904)). "[I]f the repudiation is rejected by the nonrepudiating party,

---

directly to Rooster. (Rec. Doc. 1-2 at 1).

the contract is kept alive for the benefit of both parties and both remain subject to the obligations under the contract." *Id.* (citing *Griffith v. Porter*, 817 S.W.2d 131, 135 (Tex. App. 1991)). Put differently, a refusal to perform under a contract "must be treated and acted upon as such by the party to whom the promise was made" in order to constitute a breach. *Kilgore v. Tex. Baptist. Educ. Ass'n*, 37 S.W. 598, 600 (Tex. 1896); *see also Video Ocean Group LLC v. Balaji Management Inc.*, 2006 WL 964565, at *8 (S.D. Tex 2006) (citation omitted) (noting that the nonrepudiating party can choose either to "accept the repudiation and bring a cause of action for damages immediately, or to keep the contract alive and sue for damages as they accrue").

    Fairways argues that the Court's grant of summary judgment was improper because neither party treated the PUA as having terminated in March 2012, despite Fairways' statement to that effect in its letters to Rooster and BOEM. Fairways argues that aside from its objection to Rooster's RUE request, it did not interfere with Rooster's use of the platform in any way—for example, it did not ask Rooster to stop using the platform, nor did it actually move forward with its plans to decommission the platform. Additionally, Fairways notes that Rooster did not treat the PUA as having been terminated; rather, Rooster continued to operate the platform following Fairways' letter stating that the PUA had terminated and corresponding objection to the RUE request. Therefore, Fairways argues that Rooster cannot bring a claim for wrongful termination on those grounds.

    In opposition, Rooster merely emphasizes that it had the choice either to (1) accept the repudiation or (2) continue to perform and sue for damages as they accrue. However, the essence of Fairways' argument here is that Rooster *did* make a choice, and it chose the second option, but because Fairways (aside from its objection to Rooster's RUE request) did not interfere with

Rooster's decision to continue to perform, there was no actual breach, and Rooster suffered no damages. While Rooster may still have a claim stemming from Fairways' objection to Rooster's RUE request, Fairways is correct that under Texas law, Rooster has no claim stemming from Fairways' statement that the contract had terminated. The Court erred when it held otherwise.

### 3.    The "Mutual Benefit" Provisions of the PUA

In the Order and Reasons disposing of the parties' summary judgment motions, the Court declined to rule on whether the "mutual benefit" described in the PUA ceased to exist at any specific time. (Rec. Doc. 62 at 8 n.6). Fairways does not dispute that holding, but argues that in declining to rule on the presence or absence of a "mutual benefit" while simultaneously holding that the PUA remained in effect when Fairways' lease expired, the Court failed to "give effect to all the provisions" of the PUA as required by Texas law. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Additionally, at oral argument, Fairways noted the possibility of an inconsistency later on in the proceedings if, for example, the factfinder later found that the "mutual benefit" ceased to exist when Fairways' lease terminated. Rooster responds that the Court's holding was appropriate because the wrongful termination holding was "based upon a finding 'as a matter of law,' not upon an interpretation of any particular provision of the PUA." (Rec. Doc. 76 at 7). Rooster also contends that Fairways is "attempting to argue, for the first time as part of its reconsideration, that the PUA was terminated when [Fairways'] production ceased in 2009." *Id.*

The PUA mentions a "mutual benefit" to the parties in two provisions. First, in the fifth "whereas" clause, the PUA states that Rooster's predecessor in interest "wishes to operate HI 154 'A' as designated operator for both HI 141 and HI 154 for the mutual benefit of the HI 154

10

Owners and [Rooster's predecessor in interest]." (Rec. Doc. 39-4 at 3). Second, the PUA defines the "Operator" as "[t]he Party designated . . . to conduct all operations on the platform for the mutual benefit of the HI 141 wells and the Fairways Block 154 wells." *Id.* at ¶ 1.3.

The PUA does *not* state that when a benefit to either party ceases to exist, the PUA will terminate. Furthermore, as Rooster mentioned during oral argument, there is no general requirement for consideration to be ongoing for the duration of a contract. As a result, even if the factfinder did later determine that Fairways no longer benefitted from the PUA following the expiration of Fairways' lease, the Court does not believe that it would be required to withdraw its holding that the PUA did not terminate at that time.

The Court does note, however, that since the entry of its Order and Reasons on October 15, 2012, it has permitted Fairways to add a counterclaim against Rooster for breach of contract based on Incidents of Non-Compliance allegedly issued to Rooster between 2008 and 2012. (Rec. Doc. 74 at p. 22-23, ¶¶ 53-57). If Fairways were to prevail on these counterclaims, there would be a possibility of inconsistency with the Court's prior holding as it is currently written. Accordingly, the Court will amend its prior holding to state that as a matter of contract interpretation, the expiration of Fairways' lease did not cause the PUA to terminate, but that the Court reserves any holding regarding whether the actually PUA remained in effect at that time, since Fairways now disputes Rooster's compliance with the PUA.

IV.   **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Fairways' Motion for Partial Reconsideration (Rec. Doc. 65) is GRANTED IN PART. With respect to the Court's holding that Fairways breached the contract by wrongful termination, that holding is WITHDRAWN,

and summary judgment is GRANTED to Fairways. With respect to the Court's holding that the PUA remained in effect following the termination of Fairways' lease, that holding is AMENDED to state that as a matter of contract interpretation, the expiration of Fairways' lease did not cause the PUA to terminate, but that the Court reserves the issue of whether the PUA actually remained in effect at that time until the resolution of Fairways' claim for breach of the PUA by Rooster.

      New Orleans, Louisiana, this 20th day of February, 2013.

_____
UNITED STATES DISTRICT JUDGE